WINNIPISIOGEE PAPER CO. v. NEW HAMPSHIRE LAND CO. et al.

(Circuit Court, D. New Hampshire. December 11, 1893.)

No. 372 Law.

1. DEED—DESCRIPTION—SUFFICIENCY.
   Under the rule that that is certain which can be made certain, a description bounding a grant by the northern line of a prior grant is sufficiently definite, if referred to under circumstances making it a controlling call, although said northern line has never been marked upon the ground.

2. SAME—CONSTRUCTION AND EFFECT.
   Where a line is described as running south to the "northwest corner of Burton; thence westerly along the northern line of Waterville,"—both parties assuming that the northeast corner of Waterville is at the northwest corner of Burton,—but it afterwards turns out that the Waterville corner and north line are a substantial distance further south, the grant only goes to the Burton corner, and the southern boundary must be run westerly therefrom, and parallel with the north line of Waterville, thus excluding the intervening territory. Land Co. v. Saunders, 103 U. S. 316, distinguished.

3. SAME—RECORD—ADDITIONS TO.
   The addition, to the record or copy of a deed, of a map or plan which was not on the original, for the purpose of making the claim of the

grantee more specific, but without any fraudulent intent, or purpose to make it appear as part of the original deed, does not render the grant inoperative.

**4. SAME—CONSTRUCTION.**
A quitclaim by the state to "the said A. and others claiming under T." carries the entire title to A., when it does not appear that any "others" were then claiming title to the lands, or afterwards accepted the grant.

**5. WRIT OF ENTRY—DEFENSES—FORFEITURE.**
A forfeiture accruing to the state as against its grantee may be waived, and is not available to one not claiming intervening rights.

**6. PUBLIC LANDS—STATE GRANTS.**
If one of a number of grantees of the state reject the grant, but the others accept it, and pay the consideration for the whole tract, including his share, they take title to the whole. Corbett v. Norcross, 35 N. H. 99.

**7. SAME—EJECTMENT—ESTOPPEL.**
The fact that the state's grantees, in making their survey, by mistake locate a line so as to exclude part of the grant, does not prevent them from afterwards claiming to the true line.

**8. WRIT OF ENTRY—EVIDENCE—DEEDS—COPIES.**
Office copies of deeds not in the chain of title of either party, and offered by defendant for the purpose of showing title in a third party, are not admissible, without proof of search for the originals. Wells v. Iron Co., 48 N. H. 491, followed.

**9. ADVERSE POSSESSION—WILD LANDS.**
Adverse possession under color of title, sufficient to create possessory title, may be established in New Hampshire, in the case of wild lands, by showing surveys, prosecutions for trespass, depositions in perpetuam, grants, and payment of taxes.

At Law. Writ of entry. Plea, nul disseisin. Jury waived, and trial by the court, under the statute. Findings and judgment for plaintiff.

F. N. Parsons, L. G. Leach, and E. B. S. Sanborn, for plaintiff.

Streeter, Walker & Chase and D. C. & C. C. Saunders, for defendants.

ALDRICH, District Judge. The land in question is situated in Grafton county, and between the town of Albany on the east, the Hatch & Cleves grant on the west, the town of Waterville on the south, and an alleged spotted line on the north, running from the northwest corner of Albany west to Hatch & Cleves' grant, and is 8 or 9 miles in length, and about 300 rods in width. The case is one of large importance, involving in its consideration a great number of exhibits and a vast amount of documentary and oral evidence.

Albany was chartered in 1776, and was then, and for a long time, known as Burton. Hatch & Cleves' grant was granted in 1811, and has always been known as "Hatch & Cleves' Grant." Waterville was granted in 1818, and was then, and for a long time thereafter, called the "Gillis & Foss Grant." Elkins' grant, under which the defendants claim title, was granted in 1830, and has always been known as the "Elkins Grant." Allen's grant, under which the plaintiff claims in part, was a provisional grant made in 1839, and in substance was a release of the state's interest in all ungranted lands, if any, between Elkins' grant and the north line of Waterville. Waterville and Albany join, and the west line of Albany extends something like 300 rods further north than the east line of Waterville.

The plaintiff claims the spotted line running west from the northwest corner of Albany to Hatch & Cleves' to be the south line of Elkins' grant and the north line of Allen's grant. The defendant disputes the spotted line as a boundary, and claims that Elkins' grant goes to Waterville, and that there was consequently no land ungranted at the time of the provisional grant to Allen, under whom the plaintiff claims, and that plaintiff's grantor therefore took no title by virtue of the grant of 1839. The town of Livermore was incorporated in 1876, and includes Hatch & Cleves', North Raymond, and Elkins' grants, and extends to Waterville; but it is not contended by either party that the title to the lands, or the interests of the parties, were affected thereby. The territory in the northwesterly portion of Albany or Burton, and the northerly portion of Waterville, as well as Hatch & Cleves' and Elkins', including the territory in dispute, is wild and mountainous, and in 1830 was uninhabited and covered with wooded growth, and still is without improvement or occupation, except such as result from the grants, surveys, claims, and logging operations hereinafter stated.

We now come to an important question in the case. The plaintiff contends that the north line of Waterville named in the deed or grant to Elkins and his associates of August 31, 1830, is a course rather than a monument, and, if a monument, that it is a mistaken one, and that under reasonable construction the calls of the deed stop at the northwest corner of Burton, (now Albany;) that the Waterville line should therefore be rejected, and the southerly line of Elkins' extended on the same course west from the Albany or Burton corner to Hatch & Cleves',—while the defendants contend that the north line of Waterville is called for by the deed, and that the north line of Waterville is therefore the southerly bound of Elkins' grant. If the defendants' theory is the true one, the state parted with its title in 1830, and had no land between Waterville and Elkins' to convey or release to Allen in 1839; and, if the plaintiff's theory is the true one, his title to the land in dispute is absolute and unquestioned, provided the Allen grant is operative, and the plaintiff is in a position to claim thereunder. Waterville, embracing the territory of the Gillis & Foss grant, was incorporated in 1829 as the town of Waterville, and was a territorial subdivision well known; but neither the north line, nor the northerly corners thereof had been marked on the ground in 1830, when the grant was made to Elkins and his associates. The lines of Burton (now Albany) had been surveyed and marked prior to 1830, and a corner marked, which was known as the northwest corner thereof. The description in the grant to Elkins and his associates of August 31, 1830, is as follows:

"Beginning at the northeast corner of the town of Lincoln, and running east, seven miles and one hundred and seventeen rods, to Hart's location; thence southerly, by the westerly bound of said location, to a point so far south that a line drawn thence due south shall strike the northwest corner of the town of Burton; thence south to said northwest corner of Burton; thence westerly along the northern line of Waterville to the eastern boundary of Hatch & Cleves' grant; thence northerly and westerly by said grant to the east line of Thornton; thence by said line of Thornton northerly to the line of Lincoln, and along this line to the point first mentioned."

Applying the New Hampshire rule established in Corbett v. Norcross, 35 N. H. 99, which was recognized and emphasized by the federal courts in Land Co. v. Tilton, 19 Fed. 73, and Land Co. v. Saunders, 103 U. S. 316, that, in respect to land conveyances, that is certain which can be made certain, I hold that the Waterville north line, although not on the ground, was a sufficiently definite and certain course or boundary, provided it was referred to under such circumstances as to become a reasonable and controlling call of the deed. It will be observed, by reference to the deed, that from the northwest corner of Burton the description runs "thence westerly along the northern line of Waterville," and that no course or distance is given which brings you to the north line of Waterville, which is some considerable distance south of a line drawn west from the northwest corner of Burton. I think it is established that the parties to the deed all acted upon the supposition that the northwest corner of Burton and the northeast corner of Waterville were coincident; but I find as fact that the northeast corner of Waterville was on the west line of Burton, (now Albany,) something like 300 rods south of the northwest corner thereof. There are three lines on the north of Waterville, varying in age and distinctness, the middle line, perhaps, having been the most generally accepted; but the most northerly line claimed by any one as the north line of Waterville is not less than 260 rods south of a line drawn from the northwest corner of Albany. Questions as to the true north line of Waterville are now pending in the state courts, and it is not material to inquire or decide here which is the correct one. It is a matter that can be made certain, and it is only material, for the purposes of the questions involved in this proceeding, to know that it is some substantial distance south of the corner of Burton. I find from the evidence in the case, direct and circumstantial, that at the time the resolution which was the basis of the deed was adopted and approved, and when the explorations were being made for the purpose of making the appraisal contemplated by the resolution, as well as at the time the deed was executed and delivered to Elkins and his associates, all parties understood that the northeast corner of Waterville was a part of the northwest Burton corner monument, and that a line extended westerly therefrom to the east line of Hatch & Cleves' grant would be the north line of Waterville; that no land south of that line was either appraised or paid for; and that the explorations were made by the agents named in the resolution at the expense of the petitioners, subsequent to the resolution, and before the delivery of the deed.

Upon careful consideration of the arguments of counsel, and a more complete examination of the case, I find myself unable to sustain my intimations at the trial that, under the doctrine of Land Co. v. Saunders, the Waterville line would probably govern wherever found. In this case it appears almost beyond controversy or question, from the wording of the description in the deed, aided by the situation of the property, and the situation and conduct of the parties, and the other evidence in the case competent under the

New Hampshire rule, that all concerned understood at the time of the grant that the line of Waterville extended west, direct from the northwest corner of Burton. Assuming this point to be established, as I do, it must clearly follow that neither party intended, at the time, to go further south than a line drawn west from Burton corner. In other words,, they supposed that to be the north line of Waterville, and using the term, "thence westerly along the northern line of Waterville to the eastern boundary of Hatch & Cleves' grant," as they undoubtedly did, as descriptive of a boundary as well as a course, it was inadvertently used, and to carry the conveyance to such line, which is something like 300 rods further south than either party supposed, would be doing violence to the manifest intention of the parties; and the only justification for such violence would be the inadvertent term in the deed, used by mistake, and one which falsified the fact as both parties then understood it.

An omitted boundary may be supplied to give effect to the intention of the parties; and under the same principle a mistaken term, or course, or boundary, used in a deed inadvertently, may be rejected (Morse v. Rogers, 118 Mass. 573, 578; Land Co. v. Saunders, 103 U. S. 316, 322) in a case where its effect would be, if permitted to stand, quite as clearly to defeat the manifest intention of the parties. There is great force in the reasoning of counsel for the defendants, based upon Land Co. v. Saunders, supra, as applicable to the question under consideration; but, upon careful examination of that case it seems to me as not controlling for the defendants upon the questions involved in this part of the line, but, on the contrary, in principle against their position. In that case the west line of Hart's location was known as a jurisdictional line, but its location on the ground, unlike the Burton corner, was not known by the parties. On that part of the line the parties intended to go to Hart's location; on this part they intended to stop at Burton, and supposed they did, under the term employed in the deed. There the call was "to Hart's Location;" here it is not "to" the Waterville line, but "to said northwest corner of Burton; thence westerly along the northern line of Waterville." There apt words took the parties to Hart's location without any course being supplied; here there are no apt words taking you to Waterville, and a course must be supplied to take you there, which course, so supplied, would be contrary to the understanding and intention of the parties. There the course supplied was from a bound to which the deed, by apt words, took the parties to another bound, which was well known and not in dispute; while here, to give effect to the defendants' contention, we must supply a course to reach Waterville at a point on the ground beyond where the parties understood it to be, thus including territory manifestly not intended. In that case, as has been observed, it was clear that the parties intended to go to the west line of Hart's location, and thence to Burton corner; and when the line was found, and it was ascertained that from the west line of Hart's location the due south line therefrom named in the grant would not carry them to

the northwest corner of Burton, one was supplied which would go there, and effect thereby given to the intention of the parties. In this case it is quite as clearly established that the parties did not intend to go further south than Burton corner, which was a known and definite corner marked on the ground, where they were to stop, and proceed direct from that point to the east line of Hatch & Cleves'; and, understanding that the north line of Waterville was at this point, the term descriptive of the Waterville line was used as a convenient boundary or course to carry them to the east line of Hatch & Cleves', which was the next call in the deed. Now, when it is found that the Waterville line is not at the place where the parties understood it to be, or, in other words, at the Burton corner monument, but nearly a mile south, taking the most direct course, supplying the necessary course and distance to get there would be inserting a term contrary to the facts as the contracting parties understood them, and taking from the grantor land which it did not suppose was included in the grant, and giving to the grantees land which they did not think was in the grant, which was not appraised or paid for, and which they supposed at the time was in the town of Waterville. Indeed, it seems clear that the principle controlling Land Co. v. Saunders, and which supplies a course necessary to give effect to the intentions, would reject a course or mistaken bound, quite as clearly doing violence to the intention of the parties.

Holding this view, I must construe the deed as going south to the Burton corner only, and reject the Waterville line as one inadvertently used by the parties under misapprehension; and, under what remains in the description which is sufficiently certain, the south line of Elkins' grant must go on a westerly course, parallel with the north line of Waterville, from the northwest corner of Burton (now Albany) to the east line of Hatch & Cleves'. In this view of the case the territory south of a line laid upon the ground parallel with the north line of Waterville, from the Burton corner to Hatch & Cleves', and between Waterville on the south, Burton on the east, and Hatch & Cleves' on the west, was ungranted in 1839, and passed to Allen by virtue of the resolution and deed of July 16, 1839, under which the plaintiff claims.

The defendants further object to the Allen deed from the state as a muniment of title on the ground that it was mutilated, or, in other words, a plan added thereto or inserted, after its execution, and before record. I find that the plan appearing on plaintiff's Exhibit 22, (which is a copy from the office of the secretary of state,) following the certificate of Franklin Pierce, was not on the original deed, but was added to the record or copy after the execution and delivery of the original grant, and that it was done by or at the suggestion of the plaintiff's grantors later than 1850, for the purpose of making more specific their claim as to the location of the land. I am not able to find upon the evidence that it was done with fraudulent intent, or for the purpose of making it appear as a part of the original grant. Upon these facts I am of

opinion that the grant was not rendered inoperative, or the rights of the plaintiff's grantors impaired thereby.

Another objection to the plaintiff's title under the Allen grant of 1839 is that there were grantees other than Allen named in the resolution, which is as follows: "The treasurer of the state is hereby authorized to make and deliver to the said Allen, and others claiming title under Stephen Thayer, a quitclaim deed," etc.; and similar language was used in the deed based upon the resolution. There is no evidence that there were others claiming title to the land in question, or that there were others who accepted the grant, and made claim to rights and interests thereunder. The deed was executed and delivered to Allen, who accepted it. Under such circumstances, the entire title passed to Allen under the doctrine of Corbett v. Norcross, supra; but, if not, and there are others claiming under the Thayer title and Allen grant, the defendants are not in a position to interpose such situation against the plaintiff's right of recovery in this proceeding.

The defendants also say that the deed to Allen, which was dated in 1839, was not recorded until 1860, and that, by a statute of the state, a deed not recorded within one year became void. This objection is not available to the defendants. The title passed at the time of the delivery without entry, and the effect of the failure to record within the year, as provided by the statute, would work a forfeiture. As between the state and its grantee, the forfeiture might well be waived, as was done by the resolution of 1860. If the defendants had acquired intervening rights, it might be otherwise, but that is not proved or claimed.

My verdict, therefore, on this branch of the case, is that the plaintiff has proved title under the Allen grant to all the territory between Albany, Waterville, Hatch & Cleves', and a line drawn from the northwest corner of Albany, parallel with the north line of Waterville, to the east line of Hatch & Cleves' grant.

The plaintiff also claims title to the land in question under the Elkins grant, being the same grant under which the defendants claim. If the view which I hold—that Elkins' grant does not extend southerly beyond a line drawn west from the Albany corner—should be sustained, this phase of the case becomes wholly immaterial; but I will state the facts, so that the questions under this branch of the case may be determined, provided they become material. The grant of 1830, known as the "Elkins Grant," was to Jasper Elkins, Samuel H. Walker, Jacob Sargent, Jr., Ebenezer P. Elkins, John Eaton, and David Perkins, all of Thornton, which adjoined Waterville, Hatch & Cleves', and the land granted on the west. I find that David Perkins rejected the grant, and that the other grantees accepted it, and paid the consideration, including Perkins' share, which was accepted by the state; and I hold, under the doctrine of Corbett v. Norcross, 35 N. H. 99, 100, that the title, including Perkins' share, vested in the five remaining grantees, who took all the territory covered by the state deed of August 31, 1830. I find from the marks on the ground, and other evidence in the case, that the grantees under the Elkins grant very soon

(and probably as early as 1831 or 1832) caused surveys to be made in what they then claimed to be the southerly part of the grant, and, understanding that the grant stopped at the corner of Albany, and that the Waterville line was there, caused a line to be marked on the ground as the south line of Elkins', extending from the Albany corner to Hatch & Cleves'. I do not think, however, that this survey, either on the ground of practical location or under the doctrine of estoppel, should operate to defeat the title of such grantees, provided, by the terms of the grant, their land extended further. If, by mistake, they claimed less than the grant, it should be treated as a tentative effort to locate their lands, and should be subject to correction according to the facts. So, if there are no reasons disclosed by the other branches of the plaintiff's title why it should not be so, it is open to the defendants to claim to Waterville, provided the court shall hereafter construe the Elkins grant as going to that line.

I further find that, soon after these surveys were made, (and according to the testimony of Daniel Elkins, son of Jasper, within two or three years thereafter,) the grantees discovered that Waterville was further south, and thereupon undertook to annex the intervening territory. It is claimed by the plaintiff that a division was made among the original grantees, whereby Jacob Sargent and Ebenezer P. Elkins were to take all the territory, if any, south of the Albany corner. There is no evidence in this case to justify a finding of fact, or a ruling that Jacob Sargent and Ebenezer P. Elkins took the sole title of the grantees (if they had any) to the territory south of the Burton corner.

The plaintiff's title on this branch of the case rests on two deeds from Jacob Sargent and Ebenezer P. Elkins to Stephen Thayer, one dated March 21, 1836, and the other dated June 25, 1836. The first of these I find as matter of fact, and rule as law, is void for uncertainty. There is no bound or starting point given by which the measurements can be started, and the location of the land ascertained. The deed of June 25, 1836, would seem to be sufficiently certain to answer the law. It refers to prior conveyances, and can therefore be made certain; and Jasper having previously conveyed to Ebenezer, who joins with Sargent in this conveyance, Thayer would take three undivided fifths of the title of the five original grantees, if any, in the territory south of Burton. The deed of Jasper to Ebenezer is also attacked on the ground that Jane Elkins, a witness, was the wife of Jasper. I find as a fact that she was the wife, but overrule the objection, under the New Hampshire law. Frink v. Pond, 46 N. H. 125; Pub. St. c. 224, § 20.

The defendants further object to the plaintiff's title under the foregoing deeds upon the ground that Thayer had conveyed the whole or part of his interest before his deed to Allen, in 1838, and that Sargent had conveyed the whole or part of his interest prior to his deed to Thayer, in 1836. In support of this the defendants sought to establish title in a third party by the introduction of office copies, without proof of search for the original deeds, or proof of execution or delivery. The conveyances of which the exhibits

purport to be copies are not in the chain of either party, and would therefore seem to be excluded by the doctrine of Wells v. Iron Co., 48 N. H. 491, 535.

My verdict on this branch of the case is that, provided the Elkins grant shall hereafter be construed as going beyond Albany corner, and to Waterville, the plaintiff has proved title to an undivided three-fifths interest in the land described in the deed of June 25, 1836.

The plaintiff's third and last ground is that, if the paper title fails, he has title by adverse possession.

There is much evidence bearing upon this branch of the case. It would seem that in 1836, and after the original grantees had discovered that the Waterville line was not where they at first understood it to be, Jacob Sargent and Ebenezer P. Elkins, who claimed to hold, by virtue of a division among the original grantees, all the title in that part of the grant south of the Burton corner, conveyed to Stephen Thayer, who from that time claimed to hold the land in question; that he entered upon the tract in 1836 with Jonathan Cummings, a surveyor, and made explorations with a view of ascertaining the quantity, and measured the east line of Waterville, and fixed a point as the northeast corner of Waterville; that he executed deeds of the territory, or portions of it, was involved in lawsuits based upon such conveyances, and that in 1838 he conveyed to Allen. In 1839, and subsequent to the litigation, Allen applied to the legislature for a release of the state's title, or a confirmation of the title from Sargent and Elkins and Thayer, and in the same year the legislature passed the resolution, which was approved by the governor, and the state treasurer executed and passed to Allen the deed which has been referred to as the "Allen Grant." About 1840, Allen caused a survey and plan to be made under the 2,700-rod clause in his deed from the state, indicating his claim as extending on the Waterville line 2,700 rods west from the Albany west line; thence in a northerly direction, parallel with the west line of Albany, to the line extending west from the northwest corner thereof, or, in other words, to the bound originally surveyed as the south line of Elkins' grant, thus leaving a gore between his possessions, as marked on the ground, and Hatch & Cleves' grant; and from this time Allen and his grantees have claimed the land between the lines and bounds so established, under both the Sargent and Elkins title, and the grant from the state of 1839. In 1839 or 1840, Allen caused a line to be run from a point at or near the southeast corner of Hatch & Cleves' to the west line of Albany, striking that line about 300 rods south of the northwest corner thereof, where he established a corner. Allen and his grantees have always claimed this line to be the south bound of the Allen tract. In 1840, Allen, upon notice to Ebenezer P. Elkins, one of the original grantees, caused the depositions of Davis Baker and Jonathan Cummings to be taken, "in perpetual remembrance of facts relating to lands adjoining the north line of Waterville;" and Jasper Elkins and S. H. Walker, two of the other grantees, appeared at the caption, and took part in the examination of the witnesses. In 1855 there were

some explorations and markings in the northwest corner of the Allen tract, but the evidence is not very clear as to what extent. In 1860 or thereabouts, Allen prosecuted parties for trespass and cutting timber on the east end of the territory, and in 1861 collected damages for similar cuttings. These unincorporated places were first taxed in 1861, and Elkins' grant and Allen's grant were taxed separately, as territorial subdivisions, from 1861 to 1876, when Livermore was incorporated, and the taxes on Allen's grant were paid by parties claiming under the grant of 1839. In 1864 or 1865 the holders of the Allen title permitted cutting on the east end thereof in settlement of damages. In 1869 the line was perambulated between Waterville and Allen as the town line, and the Baker line of 1840 was respotted. Upon this branch of the case the defendants claim (1) that the acts of possession have been interrupted; and (2) that, standing alone, they are not sufficient to give title to wild lands by adverse possession.

As to the first point the defendants introduced considerable evidence of logging operations at various times in the Mad river valley, in the Haselton brook valley, and on the Hancock and Eastman branches of the Pemigewassett river, all of which are in the vicinity of the land in question. None of the witnesses were able to state from recent examination the precise location of the operations, though several, in a general way, stated the cuttings to be in the "Bread-Tray" country, a part of which somewhat indefinite country, at least, is within the lines claimed by the plaintiff. The evidence was of a character uncertain, largely speculative, and unsatisfactory. The plaintiff called a witness who had recently ascertained, by explorations and surveys, the precise location of the lines claimed by the plaintiff and its grantors, and who spent several weeks in careful examination of the territory for the purpose of ascertaining the extent, if any, of the cuttings within such lines. His evidence was clear and positive that no logging operations had taken place on the territory, and that only a few scattering trees had been cut over the lines. This evidence (as said by Mr. Justice Bradley in Land Co. v. Saunders, supra) was of such a character as to admit of contradiction, but the defendants failed to avail themselves of the opportunity. Upon all the evidence in the case, including the character of the country and the length of the haul, my conclusion is that the operations in the Mad river country did not extend so far north as to reach the territory claimed by the plaintiff, and that the operations on the west and north did not extend over the possessory bounds of the plaintiff's grantors, and that the cutting of the scattering trees was not of such a character or extent as to indicate an intention to interrupt or disturb the possession. I find, so far as it is a question of fact, that the plaintiff's grantors were in open, notorious, adverse, exclusive, peaceable, and uninterrupted possession, under color of title and a claim of right, of that part of the territory marked off by the 2,700-rod limit on the Waterville line, for more than 20 years prior to the disseisin of which the plaintiff, in its writ, complains, and that the defendants' grantors had knowledge of the possession and claim of the plaintiff's grantors.

The foregoing are my findings of fact; but it is not intended thereby to remove from the case a consideration of the question of law,— whether, under such conditions, the character of the occupancy was such as to create possessory title.

The defendants contend, as matter of law, that these claims and acts of possession do not constitute a sufficiently open and actual occupancy to come within the general doctrine as to title by adverse possession. It will be found, upon examination of the cases cited by counsel in support of this position, that some do not possess the important element of color of title, while in others the acts of possession are equivocal, and without notorious claim of right, and in others were not of a character clearly indicating a claim of ownership adverse to the title of the real owner, and in others, still, the element of knowledge by the owner of the character and extent of the adverse claim did not exist. It must be admitted, however, that the authorities in many jurisdictions are not quite in harmony with what would seem to be the law of New Hampshire in respect to the application of the doctrine of title by adverse possession to wild lands, where the possession results from surveys and lines only. But in the same connection it may be remarked that it seems difficult to find any reason for a distinction between a possession resulting from surveys and lines under color of title, accompanied by an unequivocal claim, inconsistent with the title of the owner, who has actual knowledge, and a possession and occupancy of land under improvement. The language of the learned Chief Justice Parker in the early case of Bailey v. Carleton, 12 N. H. 9, 15, would indicate that the New Hampshire courts did not regard the extent or character of the territory as the test, but rather the character of the acts of possession, and knowledge of the owner. See, also, Little v. Downing, 37 N. H. 355, 366; Merrill v. Hilliard, 59 N. H. 481. Assuming that neither the deed from the state to Allen nor the deed from Elkins and Sargent of June 25, 1836, passed any title, (Waldron v. Tuttle, 4 N. H. 371,) and that the Allen deed was not recorded, (Minot v. Brooks, 16 N. H. 374,) still, the plaintiff's grantors had color of title; and in view of the nature and notoriety of the claim, and the various attempts to cumulate and strengthen the title by grants, depositions in perpetuam, surveys, prosecutions, and payment of taxes, and the relation of the holders of the Elkins' grant title to these various transactions, it would seem reasonable to assume that they had actual notice of the fact that Allen was making claims inconsistent with their title, if they understood that their lands extended below the Albany corner. The doctrine of title by adverse possession is fraught with danger, as applied to wild lands, and its application should be made with great caution; and it may be doubtful whether it should be applied upon constructive notice, or in any case, unless the evidence is clear and unmistakable that the owner had notice of the surveys and lines, as well as the character and extent of the claims. With these views it is with considerable hesitancy that I hold the acts of the plaintiff's grantors sufficient to create possessory title; but, under the peculiar circumstances of this case, it seems that the evidence warrants the finding that

the defendants' grantors had knowledge of Allen's claim, and acts of possession and ownership by him and his grantees, and either slept upon their rights or acquiesced in the title.   The resolution of the legislature in 1839, the record of the Allen grant in Grafton county in 1842, and the resolution of 1860, and the record of the grant in the office of the secretary of state in the same year, the official perambulation of the Waterville line, the payment of taxes, the depositions in perpetuam, to which two or more of the original grantees were parties, and the taxation of the Allen grant as a separate territorial subdivision, were all acts of a public and notorious character, and as such gave character and form to the claims and purposes of the plaintiff's grantors.

My verdict on this branch of the case is that the plaintiff has proved possessory title to the tract of land between Albany on the east, Waterville on the south, the line drawn from the Waterville north line parallel with Albany west line, and 2,700 rods therefrom, to the line originally marked as the south bound of Elkins' grant, and a line drawn from that point on the old line to the northwest corner of Albany.

My conclusions of law are:   (1) That the deed to Allen should be construed as releasing or granting the state's interest in all ungranted lands between Waterville, Elkins' grant, Hatch & Cleves' and Albany, and, as no entry was necessary, (Enfield v. Permit, 8 N. H. 512; Bellows v. Copp, 20 N. H. 492, 501,) that the plaintiff's grantor took title to all the territory described in the verdict on the first branch of the plaintiff's case; (2) that, if the Elkins grant goes to Waterville, the plaintiff is the owner of the undivided three-fifths of the land described in the deed of June 25, 1836, named in the verdict on that branch of the case; (3) if the plaintiff's recovery is not upon his paper, but upon possessory title, that he is restricted to the 2,700-rod limit stated in the verdict on the last branch of the case.

The defendants have 30 days in which to present a bill of the exceptions taken at the trial, and such as they desire to take from the rulings herein.   If the defendants except, the plaintiff may except to the ruling as to the uncertainty of the deed of March 31, 1836.