OSCAR PRATTE d/b/a JOY BAR MUSIC CO.

*v.*

SPIROS A. BALATSOS d/b/a JOY BAR LUNCHEONETTE.

Argued March 2, 1955.

Decided April 20, 1955.

*Ernest R. D'Amours* (by brief and orally), for the plaintiff.

*Wyman, Starr, Booth, Wadleigh & Langdell* and *Stanton E. Tefft* (*Mr. Tefft* orally), for the defendant.

DUNCAN, J. The terms of the contract between the plaintiff and Larochelle are not in dispute. It provided that in return for payment of forty per cent of the income from the record player, the plaintiff might install it in "a prominent and convenient part of . . . [Larochelle's] place of business" and that "said machine shall be operated during the term of this Agreement [fourteen years and six months] and that no similar equipment nor any other kind of coin-operated machine will be installed or operated on said premises by anyone else." Thus it was intended by the parties to the agreement that the plaintiff should have exclusive rights to operate such a record player at the location in question in connection with the conduct of Larochelle's business there.

Neither the bill of sale from Larochelle to the defendant under date of November 2, 1953, nor the contract of purchase and sale which preceded it, referred to the record player or the contract with Larochelle of September 19, 1952, relating to it. The bill of sale purported to convey "an assignment of the lease [of the premises] dated April 1, 1947." No attempt was made to assign the Larochelle contract to the defendant nor did the defendant expressly assume Larochelle's obligations under it.

On the other hand, the defendant conceded at the trial that he knew that the record player was under contract with the plaintiff

and that he took it into account as a source of income in evaluating the business. He testified that some fifteen days after the sale he learned for the first time that the plaintiff would allow him only forty per cent of the income. Under date of November 20, 1953, he notified the plaintiff to remove the machine within seven days, and a like notice was given by his attorneys on February 3, 1954.

The plaintiff takes the position that because of the finding that the defendant had notice of the existence of a contract with the former owner when he bought the business, the defendant is bound by the agreement. The cases of *Patten* v. *Moore*, 32 N. H. 382 and *General Motors* v. *Berry*, 86 N. H. 280, which he cites in support, involved the validity of liens upon property against a purchaser or attaching creditor with notice. No question of the plaintiff's title to the machine is raised in this case, nor is any claim made that the defendant purchased it as a part of the business. The only issue is whether he is bound by the contract made by Larochelle with respect to it.

The extent to which the defendant may be charged with obligations arising out of the contract made by his predecessor in the business depends upon the nature of the rights created by the contract. No claim is made that the contract constituted a lease to the plaintiff. He hired no specific space within the premises leased to Larochelle, and no intention to create the relationship of landlord and tenant is suggested by the language of the document. See *Machinist* v. *KoorKanian*, 82 N. H. 249, 252; *cf. Meers* v. *Munsch-Protzmann Co.*, 217 App. Div. (N. Y.) 541. Neither can it be said that the parties intended a revocable license, for the obvious purpose was to confer rights to operate the machine for a specified term. If as a matter of law the plaintiff acquired only a revocable license, specific performance would be futile and the plaintiff was properly remitted to his action for damages for breach of contract.

"The alternative antithesis of 'licenses' and 'leases' tends to cause a court to feel bound to label the transaction before it one or the other of the two, rather than to realize it has three choices, namely, lease, license or easement." 3 Powell on Real Property, s. 430. In *Baseball Publishing Co.* v. *Bruton*, 302 Mass. 54, the plaintiff sought to enforce a written contract, giving him "the exclusive right and privilege" to maintain an advertising sign on the wall of the defendant's building. The court concluded that the writing was neither a lease, nor a license which could be revoked

subject to the payment of damages, and stated (*p.* 57): "So far as the law permits, it should be so construed as to vest in the plaintiff the right which it purports to give . . . That right is in the nature of an easement in gross." Since the writing, like the one in the case before us, was not under seal the court held that it created an easement in equity and that the plaintiff was entitled to specific performance of the agreement. See *accord: Borough Bill Posting Co.* v. *Levy,* 144 App. Div. (N. Y.) 784. In *Rochester Advertising Co.* v. *Smithers,* 224 App. Div. (N. Y.) 435, a similar agreement relative to the use of an "advertising board" was held to be enforceable by injunction against a purchaser of the land with notice. In *Standard Fashion Co.* v. *Siegel-Cooper Co.,* 157 N. Y. 60, a contract providing for exclusive rights to conduct a business within the defendant's premises was held to entitle the plaintiff to injunctive relief against violation of the covenant for exclusive rights.

By reason of the agreement with Larochelle, the plaintiff may be considered to have acquired a right that he specifically perform. The question is presented whether that right which is in the nature of an equitable servitude is enforceable against the defendant as successor to Larochelle's interest with notice of the existence of the contract. Equitable restrictions are recognized in this jurisdiction and held to be binding upon a purchaser of the servient tenement with notice. *Nashua Hospital* v. *Gage,* 85 N. H. 335; *Sun Valley Beach, Inc.* v. *Watts,* 98 N. H. 428. No decisions of this court involving restrictions in gross, and personal to the covenantee have come or been called to our attention. The defendant contends that the contract in question cannot be enforced as a restrictive covenant because it plainly does not run with the land and is essentially affirmative rather than negative in its undertaking. The plaintiff contends that it is in the nature of a covenant running with the business and should be binding on that account, even though the contract was never assigned to the defendant. The situation is analogous to that presented by the early English cases involving "tied" houses, and holding that covenants for the purchase of beverages exclusively from one brewer were "for the benefit of the business" and enforceable against an underlessee with notice. *John Brothers &c. Co.* v. *Holmes* [1900] 1 Ch. 188; *Luker* v. *Dennis,* 7 Ch. D. 227; *Catt* v. *Tourle,* L. R. 4 Ch. App. 654. It has been pointed out that these decisions would not be followed in England today in view of the decision in *London*

*County Council* v. *Allen* [1914] 3 K. B. 642. See II American Law of Property, 428, *s.* 9.32. However this result has been criticized as "illogical," and the enforcement in this country of equitable servitudes in gross is "commended" by the author of the cited text. *Id.,* 430. See also, Clark, Covenants and Interests Running with Land (2nd *ed.*) 104, note 36; 181, 182. In an article entitled "Equitable Liabilities of Strangers," the late Chief Justice Stone, then Dean Stone, viewed the English tendency as "unfortunate," (19 Col. L. R. 177, 191) and earlier reached the conclusion that if the plaintiff has an equitable right which equity will enforce by compelling the covenantor to perform, thus giving the plaintiff a property right, "then equity should not deny relief merely because the result of a specific performance does not fall within one of the categories of property recognized as such by the courts of common law." 18 Col. L. R. 291, 313-314. In Pomeroy, Equity Jurisprudence, *s.* 1295, it is said that the doctrine that a purchaser with notice of a covenant with respect to the use of land takes subject to the covenant may be explained "by regarding the covenant as creating an equitable easement." The doctrine extends to affirmative covenants (*Id., pp.* 851, 852), and restrictive covenants creating equitable easements may be "specifically enforced in equity by means of an injunction, not only between the immediate parties, but also against subsequent purchasers with notice, even when the covenants are not of the kind which technically run with the land." *Id., s.* 1342.

The general rule received recognition in the early case of *Burbank* v. *Pillsbury,* 48 N. H. 475, 482, where the opinion was expressed that a stipulation in a deed providing for maintenance of a fence would be enforceable against a subsequent purchaser with notice. Relying upon the leading case of *Tulk* v. *Moxhay,* 2 Phillips Ch. 774 (see Clark, op. cit. *supra,* 170), the court said: "If [the obligation] is enforceable in equity, though not at law, the result, so far as this case is concerned, is the same. Upon the authorities we think it is enforceable in equity even if it be not regarded as an agreement running with the land upon which an action at law could be maintained."

The authorities support the plaintiff's claim that his rights by virtue of the contract are such as to be binding upon a purchaser with notice. The defendant relies upon the statute of frauds as a defense. R. L., *c.* 383. The contract with Larochelle was not a contract for the sale of land (*s.* 1), but if regarded as creating

an equitable interest in land (R. L., c. 259, s. 15), it was in writing and enforceable in equity although not under seal. See 2 Williston on Contracts (Rev. *ed.*) ss. 493, 493A. The plaintiff does not claim that the defendant is chargeable upon any "special promise" to answer for Larochelle's default. R. L., c. 383, s. 2. Furthermore, an injunction which would prevent the defendant from interfering with the plaintiff's rights would not operate to bind the defendant as a promisor by virtue of "any agreement . . . not to be performed within one year." *Id.* His obligation to respect the terms of the contract would arise from no promise made by him, but from his succession to the interest of the promisor, with notice of the promise. If the contract binds him it is "because he has taken the estate with notice of a valid agreement concerning it, which he cannot equitably refuse to perform." *Whitney* v. *Union Ry. Co.*, 11 Gray 359, 364. See anno. 23 A. L. R. (2d) 520; 5 Restatement Property, s. 539. "The purchaser with notice . . . is liable upon an equitable servitude, not as a contractual obligation, but because the land is burdened by an incorporeal property interest for the benefit of another." II American Law of Property, *supra*, s. 9.31. We conclude that this is not an action brought to charge the defendant "upon a . . . promise" (R. L., c. 383, s. 2) but to protect an equitable interest belonging to the plaintiff, and that the statute affords the defendant no defense.

The absence of any finding by the Trial Court concerning the effect of the defendant's knowledge of the existence of the Larochelle contract suggests that the ruling that the defendant was not bound by it was made as a matter of law. On the other hand, the decree may imply a finding that the defendant was not chargeable with notice of its terms. Under these circumstances the case will be returned to the Superior Court for an amendment, or for a new trial the extent of which will be for the Trial Court. *Colby* v. *Varney*, 97 N. H. 130, 134.

Whether the defendant had such notice as to put him upon inquiry as to the terms of the contract (see *Rochester Advertising Co.* v. *Smithers*, 224 App. Div. (N. Y.) 435, *supra*) and what such inquiry would probably have disclosed (*Janvrin* v. *Janvrin*, 60 N. H. 169; *Dame* v. *Fernald*, 86 N. H. 468, 472) must be determined before the defendant's responsibility with respect to the contract can be fixed. If the Court intended by its decree to imply a finding that the notice was insufficient to subject the defendant to the plaintiff's rights, the decree may stand. If not, the facts

should be found; and if the defendant is bound by the agreement, an injunction may issue in the Court's discretion. *Manchester Dairy System, Inc.* v. *Hayward,* 82 N. H. 193, 204, 205.

*Remanded.*

All concurred except KENISON, C. J., who was of the opinion that the plaintiff's exceptions should be overruled.