Rockingham
No. 89-405

ROBERT SMITH AND JOANNE SMITH

v.

WEDGEWOOD BUILDERS CORP. & a.

April 23, 1991

*Brown and Lapointe*, of Exeter (*Scott W. LaPointe* on the brief and orally), for the plaintiffs.

*Holland, Donovan, Beckett, Welch & Hermans P.A.*, of Exeter (*Robert B. Donovan* on the brief and orally), for the defendants Jean B. Fernald, John T. Fernald, Jr., and David B. Fernald.

*Sheehan, Phinney, Bass & Green P.A.*, of Portsmouth (*Denise A. Poulos* and *John A. Rachel* on the brief, and *Mr. Rachel* orally), for the defendants Janet McCoy and Timothy Fuller.

HORTON, J. The plaintiffs, Robert and Joanne Smith, appeal from the Superior Court's (*Mangones*, J.) amended order, denying their petition to quiet title in a certain parcel of land in Nottingham (the "McCrillis lot") and to a strip of land, also in Nottingham, referred to as a "fifty-foot right of way." Contested claims to the former parcel were asserted by the defendants Jean B. Fernald, John T. Fernald, Jr., and David B. Fernald (the "Fernalds"). Contested claims to the latter parcel were asserted by the defendants Janet McCoy and Timothy Fuller. The trial court, in both contests, quieted title in the respective defendants. We affirm the trial court's decree in all respects, with the exception of its order quieting title to the right-of-way in the defendants McCoy and Fuller, which, for the reasons stated below, we reverse.

This case arose as a complicated land claim spawned by land conveyancing practices familiar to many of the rural areas of our State. As development increases and land values rise, these conveyancing sins return to haunt us. In this case, a good measure of talented effort and six days of court time were expended to bring these problems to our attention.

In May of 1976, the plaintiffs bought a 25.5-acre subdivided lot from Inland Acres Associates, a limited partnership. The purchase and sale agreement concerning this purchase, dated October 20, 1975, contained an "ADDITIONAL PROVISIONS" section, stating, *inter alia*, that "THE SELLER HEREBY GIVES TO THE BUYER FIRST RIGHT OF REFUSAL ON ANY OR ALL OF THE REMAINING PARCEL OF LAND THAT THIS PARCEL WAS SUD [sic] DIVIDED OUT OF." The sales agreement was executed by Mr. Smith and by W. S. Richey, Jr., as general partner, without further formality, and was recorded on August 18, 1976, in the Rockingham County Registry of Deeds.

In 1983, the plaintiffs sought judicial enforcement of their right of first refusal against Inland Acres Associates. The superior court's decision, *Smith v. Inland Acres Assoc.*, Rockingham No. E105-83 (June 17, 1986), confirmed the plaintiffs' claim. The court ordered conveyance of a 60-acre parcel at the price established by Inland Acres Associates's earlier sale. Accordingly, in August, 1986, Inland Acres Associates made a conveyance to the plaintiffs which the plaintiffs now contend gave them title to the McCrillis lot. There is no contention that the 1986 conveyance passed title to the right-of-way. The plaintiffs then undertook to research the extent of, and to survey, the real estate conveyed to them by the 1986 deed. They sought to determine any residual rights accruing to them under the right of first refusal. A number of claims and conflicts were uncovered. Most were either satisfactorily resolved or were not pursued. Two unresolved claims, however, are advanced for consideration on appeal; as they are separate and distinct in basis and result, we will address them separately.

## I. *The McCrillis Lot*

In the course of their research, the plaintiffs found that the Fernalds had a conflicting claim to ownership of the McCrillis lot. The common source of each party's chain of title was one Chester Bryson. Bryson, under deed of December 23, 1957, recorded March 20, 1958, conveyed to John T. Fernald and Frederick L. Fernald, the defendant Fernalds' immediate predecessors-in-title,

> "all my right, title and interest in and to land in Nottingham, in the County of Rockingham and State of New Hampshire, which is in the section known as Mullegan Section, the land being bounded by Route 152, Westcott Road, Kennard Road, Smoke Street, Kelsey Road, and the Perley Batchelder Road. Also all land in the Banks lot, so-called."

Later, in an October, 1958 deed, Bryson conveyed various lots to the plaintiffs' predecessor-in-title, including one group of lots presumed to include the McCrillis lot.

After trial of the plaintiffs' petition to quiet title, the trial court found that Bryson's 1957 deed conveyed the McCrillis lot and, because that deed was prior in time to the 1958 conveyance into the plaintiffs' chain of title, held that the Fernalds prevailed. Accordingly, the trial court ordered title to be quieted in the Fernalds.

On appeal, the plaintiffs assert that Bryson's 1957 deed into the Fernalds' chain of title did not contain the McCrillis lot or, in the alternative, that the deed was so vague that it should not qualify, legally, as a conveyance of the McCrillis lot. They also assert that the court erred in finding that Bryson probably made the second conveyance with what the plaintiffs characterize as fraudulent intent.

The plaintiffs' first assertion, that the 1957 deed did not include the McCrillis lot, is based on the theory that the deed's description establishes a rough perimeter and that only Bryson land within this perimeter was conveyed. According to the plaintiffs, the phrase "being bounded" means "circumscribed" or "enclosed" and reveals a clear intent by Bryson to convey only land falling within the perimeter established by the several roads included in the deed. Under this interpretation, the McCrillis lot, although it was Bryson land "bounded by . . . [the former] Perley Batchleder Road," was not conveyed, because that lot is on the other side of Batchelder Road and, therefore, outside the suggested perimeter. Conversely, the defendants' interpretation, which was adopted by the trial court, is that any Bryson land abutting in any way any of the named roads is "bounded by" the roads and was, therefore, conveyed by the 1957 deed. Thus, the McCrillis lot, fronting on Batchelder Road, was included in the conveyance.

■ Interpretation of deeds in a quiet title action is ultimately within the province of this court, referencing the factual findings of the trial court as to the parties' intentions. *Seward v. Loranger*, 130 N.H. 570, 574, 547 A.2d 207, 210 (1988) (citations omitted). On a fair reading of the 1957 deed, taken with the findings of the trial court and a review of the exhibits in the record, we are convinced that the trial court properly adopted the defendants' interpretation and correctly found that the McCrillis lot was included in the 1957 conveyance.

It is difficult from the record presented by the plaintiffs to determine the extent of Bryson holdings in 1957. It would appear that he

owned land both within and without the proposed perimeter and did not own anything that could be considered a solid single piece bounded by all of the named roads. What we do know, by virtue of the trial court findings, is that the only parcel owned by Bryson and bounded by the then-named Perley Batchelder Road was the Mc-Crillis lot. Thus, to exclude the McCrillis lot from the property conveyed by the 1957 deed would render the inclusion of Perley Batchelder Road in that deed meaningless.

Moreover, a review of the location of the boundary roads listed in the 1957 deed, as established by the exhibits submitted to the trial court, displays a poor "perimeter" at best. The asserted perimeter fails to close in two substantial and material areas. The plaintiffs seek to cure one of these closure problems by their motion in this court to expand the record. The offered expansion is a 1955 vote of the Town of Nottingham that purports to show a different name for one of the critical roads in the exhibits, a name used in the 1957 deed, thereby providing one element of closure. The defendants made timely objection to the plaintiffs' motion. Although we grant the motion to expand the record, even with this purported name change before us, we are satisfied that the language of the 1957 deed and the layout of the roads named therein do not demonstrate an intent to describe a perimeter.

■ The plaintiffs further assert that, even if the defendants' interpretation is adopted, the description in the 1957 deed is so vague and indefinite that the deed must fail as an ineffective conveyance. Neither the legislature nor this court has prescribed minimum land description standards, other than certain requirements to aid the recording officials. *See* RSA 478:4-a. A deed generally will be held sufficiently definite if it is possible "by any reasonable rules of construction to ascertain from the description, aided by extrinsic evidence, what property is intended to be conveyed." 23 AM. JUR. 2d *Deeds* § 50 (1983); CASNER, AMERICAN LAW OF PROPERTY § 12.46 (1952). "In respect to land conveyance, that is certain which can be made certain." *Winnipisiogee Paper Co. v. New Hampshire Land Co.*, 59 F. 542, 546 (C.C.D.N.H. 1893).

■ The fact that the deed description burdens the title examiner with an enormous task of research, to determine what is conveyed, has no bearing on the validity of the conveyance, if, in fact, the property conveyed can be reasonably determined from the description. The description used by Bryson in his 1957 deed may be criticized as careless and slothful, and as reflecting a bad conveyancing practice,

but not as void for indefiniteness. It is clear that the plaintiffs could have determined precisely what property Bryson owned along the named roads. The extrinsic evidence considered by the trial court adequately supports its finding that the 1957 deed included and intended to convey the McCrillis lot.

The plaintiffs raise a final issue regarding the McCrillis lot. They argue that the fact that Bryson purported to make a conveyance of the McCrillis lot in 1958 strongly supports their interpretation that his 1957 deed did not include that lot. They complain that the trial court improperly ignored this evidence and made an improper finding that Bryson was engaging in fraud in the 1958 conveyance.

The material words in the trial court's order were these: "Based on testimony regarding the character of Chester Bryson, it is not unlikely that he 'conveyed' the parcel in issue in both the 1957 deed *and* the 1958 deed. As a result, the 1957 deed, as the earlier deed, controls." (Emphasis in original.)

■ Contrary to the plaintiffs' position, this language does not necessarily impute fraud to Bryson's actions. Carelessness, a lack of drafting expertise, and an unwillingness to keep track of his extensive holdings are all character traits which the trial court could have been noting and which could explain the double conveyance. Further, the finding of any character weakness is not essential to the decision. The trial court was commenting on an inference from one piece of evidence, the double conveyance. The crucial evidence was the existence of the 1957 deed, which included the McCrillis lot and was prior in time to the 1958 deed.

■ The plaintiffs' claim of title to the McCrillis lot was properly rejected, and title to the lot was properly quieted in the defendants. The decree, as it relates to the McCrillis lot, is affirmed.

## II. *The Right-of-Way*

At some point after receiving the right of first refusal in 1976, the plaintiffs found that part of the "remaining parcel," as described in the right of first refusal, included a strip referred to as a "50 foot right-of-way" leading from McCrillis Road. The plaintiffs determined that fee simple to this right-of-way had been conveyed, on April 10, 1978, by Inland Acres Associates to one John Bryer, by deed recorded April 18, 1978. They further discovered that Bryer had included this right-of-way in a November, 1979, recorded conveyance to the defendants McCoy and Fuller. The plaintiffs included the right-of-way in their present action to quiet title.

In the trial court, the plaintiffs argued that Bryer and his successors in interest, McCoy and Fuller, took and held the right-of-way with notice of, and subject to, the plaintiffs' right of first refusal. The trial court disagreed, ruling that McCoy and Fuller had neither constructive nor actual notice of the plaintiffs' interest in the land. The court reasoned that the recorded purchase and sale agreement did not satisfy the technical requirements of RSA 477:3, which sets out the formalities for the execution of a deed or other conveyance, and thus failed to provide subsequent purchasers constructive notice of the plaintiffs' interest in the right-of-way.

On appeal the plaintiffs argue that the recorded right of first refusal is not a "conveyance of real estate" requiring adherence to the recording formalities of RSA 477:3. Rather, they argue that the right of first refusal is an "instrument which affects title to [an] interest in real estate" under RSA 477:3-a, and therefore, by recording it, they provided valid constructive notice to subsequent purchasers. We agree.

Many items appear in our real estate records that are not a "deed or other conveyance of real estate" under RSA 477:3. RSA 477:3-a mandates recording for a "deed or other conveyance of real estate" *and* for any "other instrument which affects title to any interest in real estate." It provides that recording will make such an instrument "effective as against bona fide purchasers for value." *Id.* The plaintiffs' right of first refusal found in the purchase and sale agreement was properly recorded. It was an instrument which affected the title to an interest in real estate. It was not a deed, and it did not convey an estate in land. The right of first refusal created an equitable restriction binding on McCoy and Fuller, *see Tucker v. Conners*, 342 Mass. 376, 382, 173 N.E.2d 619, 623 (1961) (and material cited therein); *Swanson v. Priest*, 95 N.H. 64, 66–67, 58 A.2d 207, 209 (1948) (purchase and sale agreement binding on subsequent purchasers of land), which, absent recording, would have been subject to being cut off by conveyance to a bona fide purchaser for value.

In an action to quiet title, the court's responsibility is to "determine the rights of the parties, whether derived from deeds, wills or other instruments . . ." RSA 498:5-d (Supp. 1989). By virtue of the recording, the defendants McCoy and Fuller, and their predecessor-in-title, Bryer, were given constructive notice of the plaintiffs' equitable interest and were under a duty to make inquiry to discover its extent and effect. *See Amoskeag Bank v. Chagnon*, 133 N.H. 11, 15,

572 A.2d 1153, 1156 (1990) (potential bona fide purchaser has duty to investigate, even if recording is defective). When the defendants acquired the right-of-way, they took it subject to any equitable right held by the plaintiffs. *McCone v. Courser*, 64 N.H. 506, 508, 15 A. 129, 130 (1988); *Pratte v. Balatsos*, 99 N.H. 430, 435, 113 A.2d 492, 496 (1955).

The plaintiffs argue that in their 1983 litigation against Inland Acres Associates, legal title to the right-of-way was conveyed to them by judicial decree, based on their request for specific performance. This argument fails. The 1983 action for specific performance was brought exclusively against Inland Acres Associates, which at that time did not own the right-of-way. Thus the trial court could not properly render judgment in the absence of McCoy and Fuller, who had owned the recorded interest in the right-of-way since 1979. *See Sorenson v. Wilson*, 124 N.H. 751, 758, 476 A.2d 244, 247; *Seward v. Loranger*, 130 N.H. at 574, 547 A.2d at 210. Because the plaintiffs have assumed that they currently owned the land, by virtue of the earlier action, they have not sought the remedy of specific performance in this action against McCoy and Fuller to obtain title to the right-of-way. Accordingly, McCoy and Fuller currently hold full legal title to the right-of-way which is subject to the plaintiffs' right of first refusal. Although the plaintiffs currently seek enforcement of this equitable right, they requested only that the trial court quiet title in the right-of-way and failed to request that their right of first refusal so be enforced as against McCoy and Fuller. Such a request would require an action seeking the equitable remedy of specific performance, initiated by proper pleading and subject to all material equitable defenses.

 Therefore, the trial court's quieting of title to the right-of-way in the defendants McCoy and Fuller is in error, and we reverse its order. However, the denial of the plaintiffs' prayer for relief is proper, and that portion of the decree is affirmed. The defendants McCoy and Fuller are left with ownership of the right-of-way, subject to the equitable claim of the plaintiffs, should the plaintiffs choose to pursue the claim in a proper proceeding. Because the right of first refusal arose in 1975, was allegedly breached as early as 1976, and has not yet been properly challenged, the plaintiffs might well consider the effect of laches on their renewed equitable remedy

against McCoy and Fuller, as against their legal remedy for the alleged breach.

*Affirmed in part and reversed in part.*

All concurred.