MARY STEWART *vs.* JACOB ALPERT & another.

Suffolk.    November 29, 1927. — January 4, 1928.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Equitable Servitude.    Equity Jurisdiction,* To enforce equitable servitude.

The plaintiff in a suit in equity to enjoin the defendant from erecting structures upon his land in violation of certain restrictions contained in a deed to the defendant's predecessor in title has the burden of proving that the restriction was established for the benefit of the lot which the plaintiff owns, and that the defendant had actual or constructive notice of such a right in the owner of the plaintiff's lot.

In a suit of the character above described, it appeared that the deed to the plaintiff's predecessor in title was from the city of Boston in 1860, and that to the defendant's predecessor in title was from the Boston Water Power Company in 1865.    There was no evidence of a common predecessor in title    By an instrument recorded in 1856, the Commonwealth, the Boston Water Power Company and the city of Boston entered into an agreement which has come to be known as the "Tripartite Indenture" for the filling and development of certain lands in the Back Bay, which lands included the lands of the plaintiff and of the defendant.    There was nothing therein as to any restrictions to be imposed by either party upon the sale of its lands.    The deed to the plaintiff's predecessor in title contained a restriction that buildings thereon should be set back from the street ten feet.    The deed to the defendant's predecessor in title required a setback "to the line of the buildings erected on land sold by the City" on the same street, and a setback of ten feet from a street bounding it on the side.    The bill was dismissed.    *Held,* that

(1) The facts disclosed no common title and no basis for an inference that the restriction in the deed of the defendant's predecessor in title was inserted for the benefit of the estate owned by the plaintiff;

(2) The "Tripartite Indenture" did not give the plaintiff any equitable right to enforce the restriction thereafter placed by the Boston Water Power Company upon the land of which the defendant's lot was a part;

(3) The mere fact, that somewhat similar restrictions appeared in deeds of the predecessors in title of both parties, did not give one of them an equitable easement in the land of the other; nor did mere similarity of development of the property with respect to type and setback of buildings;

(4) The bill properly was dismissed.

BILL IN EQUITY, filed in the Superior Court on July 31, 1925, to enjoin the defendants from violating building re-

strictions, alleged to have been "imposed in perpetuity" upon land of the defendant "by the Commonwealth of Massachusetts, the Boston Water Power Company, and the city of Boston."

The suit was referred to a master and was heard on the pleadings and the master's report by *Cox*, J. Material facts found by the master are stated in the opinion. The finding of the master as to the "Tripartite Indenture" was as follows:

"By instrument dated December 11, 1856, recorded with Suffolk Registry of Deeds, Book 719, Page 30, the Commonwealth, the Boston Water Power Company and the city of Boston entered into an agreement which has come to be known as the 'Tripartite Indenture' for the filling and development of certain lands in the Back Bay, which lands included the land now owned by both parties to this proceeding. This indenture was amended by instrument dated December 31, 1864, recorded with said Deeds, Book 854, Page 241. I find nothing in either of these agreements as to any restrictions to be imposed by either party upon the sale of its lands."

The agreement was not a part of the record. By order of the judge, a final decree was entered dismissing the bill. The plaintiff appealed.

*S. M. Child*, for the plaintiff, submitted a brief.

*I. Harris*, for the defendants.

SANDERSON, J. The plaintiff has appealed from a decree dismissing the bill in equity brought to enforce a building restriction on property located on the northeasterly corner of Columbus Avenue and Massachusetts Avenue in Boston, owned by the defendant Jacob Alpert, who will be referred to as the defendant. The plaintiff's premises are also on Massachusetts Avenue a short distance from those of the defendant. Her title was acquired by mesne conveyance from the city of Boston; and the defendant, by similar conveyance, derived title from the Boston Water Power Company. There was no evidence of a common predecessor in title. The plaintiff alleges that by a tri-party agreement between the Commonwealth of Massachusetts, the Boston Water Power Company, and the city of Boston, made in 1856

and amended in 1864, for the filling and development of certain lands in the Back Bay which included the lots now owned by the plaintiff and the defendant, the parties established a common scheme for development of a part of Back Bay. The master states that neither the indenture nor its amendment made reference to any restriction to be imposed by either party upon the sale of its land.

In 1860 the city of Boston sold the land now owned by the plaintiff with restrictions, one of which was that the front line of the building which may be erected on the lot shall be placed on a line parallel with and ten feet from "Chester Street." In 1865 the Boston Water Power Company sold the land now owned by the defendant by deed containing a restriction that the front walls of all buildings upon the lot shall be set back to the line of the buildings erected on land sold by the city on West Chester Park (now Massachusetts Avenue), and that all buildings shall be set back ten feet from the line of Columbus Avenue. Many years ago dwelling houses four stories in height — which for the most part are still standing and which complied with the restrictions — were constructed on lands of both parties to this proceeding, as well as upon all the other lots on both sides of Massachusetts Avenue. On July 2, 1925, the defendant obtained a permit from the city, and thereafter began building a one-story addition to his building extending substantially to the sidewalk of Massachusetts Avenue and of a length nearly equal to the whole frontage of his house on the avenue. The plaintiff first learned of the building plans by observing the digging going on in front of the house. She then consulted counsel and on July 21, 1925, caused a notice to be served on the defendants that she intended to enforce the restrictions placed on the defendant's property "as imposed by the agreement between the Commonwealth of Massachusetts, the Boston Water Power Company and the City of Boston." The building was then substantially completed, and later was finished under an agreement that such completion would not affect the plaintiff's rights.

The master made findings as to changes in the character of the neighborhood and also found that the plaintiff has

suffered no diminution of light, air, or prospect, from the acts of the defendant, and that the value of her property has not been decreased. "When . . . it appears by a fair interpretation of the words of a grant that it was the intent of the parties to create or reserve a right, in the nature of a servitude or easement, in the property granted, for the benefit of other land owned by the grantor, and originally forming with the land conveyed one parcel, such right will be deemed appurtenant to the land of the grantor and binding on that conveyed to the grantee, and the right and burden thus created will respectively pass to and be binding on all subsequent grantees of the respective lots of land . . . . A court of equity will give full effect to the stipulation, on the complaint of a party for whose benefit and protection, as owner of the land, the stipulation was intended." *Whitney* v. *Union Railway,* 11 Gray, 359, 365. *Hill* v. *Levine,* 252 Mass. 513, 515. Such a restriction is in the nature of an equitable easement or servitude passing with a conveyance of the premises to subsequent grantees. *Sprague* v. *Kimball,* 213 Mass. 380, 383.

In *Allen* v. *Massachusetts Bonding & Ins. Co.* 248 Mass. 378, the court, in referring to restrictions as to building setbacks from street lines and projections into reserved spaces, said, at page 384: "Such stipulations often have been held to be true equitable restrictions enforcible by other owners tracing their titles to a common grantor by whom the same general scheme was established."

In *Elliston* v. *Reacher,* [1908] 2 Ch. 374, 384, one of the prerequisites of enforcing restrictive covenants was said to be "that both the plaintiffs and the defendants . . . purchased their lots from the common vendor."

In *Equitable Life Assurance Society* v. *Brennen,* 148 N. Y. 661, 671, 672, the court, speaking of the right to enforce equitable restrictions, said: "There must be found somewhere the clear intent to establish the restriction for the benefit of the party suing or his grantor, of which right the defendant must have either actual or constructive notice." The right to establish such restriction by recorded agreements entered into between owners of separate parcels of land, and the

right of their successors in title to enforce such restrictions, need not be considered because the agreement in this case did not purport to establish any restriction. A buyer of real estate cannot be charged with constructive notice of an equitable restriction unless he can find it recorded somewhere in his chain of title.

The findings of fact disclose no common title and no basis for an inference that the restriction in the deed of the defendant's predecessor in title was inserted for the benefit of the estate owned by the plaintiff. See *Jewell* v. *Lee*, 14 Allen, 145, 149. There was nothing in the defendant's chain of title from which he could be held to have constructive notice of any such right in the plaintiff. The agreement entered into between the plaintiff's predecessor in title and the defendant's predecessor in title, for the filling and development of the part of the Back Bay which included their land, does not give the plaintiff any equitable right to enforce the restriction thereafter placed by the Boston Water Power Company upon the land of which the defendant's lot is a part. The mere fact that somewhat similar restrictions appear in deeds of the predecessors in title of both parties does not give one of them an equitable easement in the land of the other; neither is such right conferred by the fixing of the building line in one deed by reference to the one established in deeds of the neighboring land, nor from the uniformity in the height of buildings on the lots in question and on the other lots on Massachusetts Avenue. *Seabury* v. *Metropolitan Railroad,* 115 Mass 53.

The plaintiff, to establish her right to equitable relief, has the burden of proving that the restriction was established for the benefit of the lot which she owns, and that the defendant had actual or constructive notice of such a right in the owner of the plaintiff's lot. Upon the facts found she has failed to maintain that burden. As she is not entitled to equitable relief for the reasons stated, it is unnecessary to consider the effect of the findings as to the change in the character of the neighborhood.

*Decree affirmed with costs.*