Carl Schefer, Plaintiff, *v.* Thomas R. Ball, Defendant.

(Supreme Court, New York Special Term, March, 1907.)

Contracts — Interpretation of contract — Conditions precedent — Performance of conditions: Time of performance — Reasonable time; Waiver of conditions precedent.

Recording written instruments and notice of title — Sufficiency of record to constitute notice — Effect of defects in instrument.

　　Where an instrument was signed by fifteen lot owners upon a city street, covenanting that all buildings to be erected upon such lots should be set back seven feet from the front of the lots and that such covenant should be deemed to run with the land, and further providing that the instrument should be of no effect until all the parties should have first executed and acknowledged the same, or the same should have been duly proved before a proper officer, and where three of the parties failed to acknowledge the

instrument and the original certificate of proof as to them was defective for its failure to state the address of the subscribing witness, but eight years thereafter a proper and valid certificate proving the execution of the instrument by such parties was made; and where during such period eight of the parties conveyed their lots by deeds not mentioning such restrictions, held, that, the proof of execution not having been made within a reasonable time nor until a majority of the signers had conveyed without recognizing its validity, the making of the certificate after the lapse of eight years was insufficient to give it validity.

The fact of a general observance of the terms of the agreement after it had been disregarded for eight years and the voluntary placing of the buildings erected on the lots in conformity with its provisions will not serve to render it obligatory.

Nor will the fact that defendant had notice of the agreement as recorded, since the record at the same time disclosed the want of due proof of execution which rendered the instrument ineffectual.

Moreover, the change in the character of the neighborhood from a residential to a business locality since the instrument was originally signed would be a sufficient reason for refusing an injunction to enforce the covenant.

ACTION for an injunction.

James, Schell & Elkus, for plaintiff.

Merrill & Rogers, for defendant.

DAVIS, J. This action is brought to enjoin the defendant from building in violation of certain restrictive covenants contained in an instrument under seal executed in 1846, and designed to affect the property on both sides of Thirty-seventh street, between Fifth and Sixth avenues. The plaintiff has owned and resided in No. 40 West Thirty-seventh street since 1886. The defendant owns Nos. 36 and 38 West Thirty-seventh street immediately adjoining plaintiff's property on the east. These lots are located between Fifth and Sixth avenues on the south side of Thirty-seventh street, and are about ninety-nine feet deep. The defendant is erecting upon his two lots a ten-story brick business building with its front coincident with the street line. The foundation of this building has been laid. The plaintiff seeks to enjoin

its further progress, chiefly because of defendant's purpose to build upon the seven feet of land immediately south of the street line in alleged violation of the restrictive covenant referred to, and which forbade the erection of a building upon this space. This alleged covenant is contained in an instrument under seal executed on June 27, 1846, by fifteen persons constituting all except two of the owners of this land between Fifth and Sixth avenues, and recorded July 17, 1846, at the request of Abraham B. Embury, one of the parties executing it (Exhibit F). Gilbert Giles, the plaintiff's predecessor in the title to No. 40 West Thirty-seventh street, was one of the two lot owners who did not join in this instrument. Some of defendant's predecessors in the title to Nos. 36 and 38 (excepting the westerly one foot of No. 38) were parties to the instrument. But plaintiff claims that he is entitled to enforce this covenant by virtue of a certain agreement executed by Gilbert Giles, plaintiff's predecessor in title, on April 28, 1854 (Exhibit 1). This latter agreement recites the parties to and the terms of the agreement of June 27, 1846, to which Giles was not a party, the fact that Giles now is, and was, the owner of land on such part of Thirty-seventh street at the time of the execution of the agreement of June 27, 1846, and his desire to have that agreement to apply to all the lots on that part of Thirty-seventh street. It then provides that in consideration of the premises and of one dollar, " I do hereby, for myself, my heirs, executors, administrators and assigns, covenant and agree to and with said parties and each of them, and their respective heirs and assigns, to observe, keep and maintain the stipulations, agreements and covenants contained in said articles in respect to the land I own as aforesaid, with the like force and effect in all respects as fully as if I had been named in and had duly executed and acknowledged the same, hereby declaring that said covenants shall be deemed to be covenants running with my said land, and that all sales and conveyances therefor made by me shall contain a clause referring to said covenants." This instrument was executed by Giles only, and was recorded on July 28, 1854, at the request of Mr. Waddell of the parties who executed the agreement of June 27, 1846.

However, the question of plaintiff's right to bring this action to enforce the covenant contained in the instrument of 1846 by virtue of the instrument thus executed by Giles is not now disputed. The point was raised by the defendant on the trial, but expressly waived, the defendant conceding for the purposes of the trial that the plaintiff has just the same right to bring this action as had the original parties to the agreement of June 27, 1846, but no greater right. The defendant, in other words, attacks the agreement of 1846 itself, and claims that by its terms it never went into effect, and that, therefore, no covenant was ever created thereunder. This contention requires an examination and construction of that agreement. It contains, among other things, a covenant requiring that all buildings to be erected on the lots of the various parties should be set back at least seven feet from the front of the lot, and it is expressly stated therein that the covenants shall be deemed to run with the land. It also contains the following provisions: " It is hereby also agreed and declared, that this instrument is not to have any effect or be of any force whatever, until all the parties herein named shall have first executed and acknowledged the same, or the same be duly proved before a proper officer." The defendant contends that this latter provision of the agreement was not complied with, and that, therefore, the agreement never became operative. He points out that while all of the fifteen parties named therein signed it, there was no proper certificate as to its execution, and the acknowledgment of its execution on the part of three of them, viz.: John Murray Ogden, Murray Hoffman and Lindley M. Hoffman. In other words, he contends that the agreement by its terms was not to go into effect unless it bore not only the signature of each party but also a proper written certificate of due execution and acknowledgment by each, made by a proper officer. The original agreement was produced at the trial and marked " Exhibit F." It bears the signatures of all the parties, together with certificates of acknowledgment of all but three of the parties. Its execution by John Murray Ogden, Murray Hoffman and Lindley M. Hoffman is attempted to be proved by a subscribing witness, one Shea, who

appeared before Charles E. Shea, a commissioner of deeds, on July 10, 1846. The certificate of Charles E. Shea is written upon the instrument, but it omits to state the address of the subscribing witness, a prerequisite to the recording of the agreement. Notwithstanding this omission the instrument was recorded July 17, 1846, and from this certificate it appears that the subscribing witness was duly sworn, and thereupon deposed that he knew these three parties described in and who executed the agreement; that he was present and saw them sign and execute it, and that he thereupon signed his name as a witness. The question to be determined here is whether the agreement was executed in the manner provided in the instrument itself and, if not, whether the covenant ever had any binding force under this instrument. It is a question of construction of the agreement itself. Before the agreement can become binding by its terms it must be executed and acknowledged or duly proved before a proper officer. It seems clear that this provision requires something more than mere oral acknowledgments of its execution before an officer or a subscribing witness. It requires written certificates of proof. It was the purpose of the parties to create a freehold estate in the lands of each in favor of each of the others. Nellis v. Munson, 108 N. Y. 458. They attempted to do this by a sealed instrument. Keeping in view the necessity of giving notice to all subsequent grantees and of making proof of the document accessible at all future times, they provided that the instrument should be put in such shape as to official certificates as to permit it to be recorded and to make it prove itself under the statutes then in force upon a mere production of it or of a certified copy from the record, without other evidence of its execution. This intent is evidenced by the fact that the instrument bears certificates in some form or other as to the execution by each of the parties, and by the further fact that upon these certificates it was recorded. It happens that the certificate of the commissioner of deeds, Shea, fails to state the address of the subscribing witness. This omission would prevent the introduction in evidence of the instrument without other proof of its execution by the three parties named, i. e., those who

made their acknowledgments before that subscribing witness. It follows, therefore, that as to these three persons the agreement was not duly proved before a proper officer as therein required. Irving v. Campbell, 121 N. Y. 353, 360. Nor was a proper certificate of the testimony of this subscribing witness attached to the instrument until May 19, 1854, when the witness appeared before a notary public, whose certificate in proper form is now attached to the agreement. In other words, the terms of the proposed agreement were not complied with until May 19, 1854, nearly eight years after the signing of the agreement. During the period intervening between 1846 and 1854, eight of the parties to the original agreement conveyed their holdings on both sides of Thirty-seventh street by deeds omitting any reference to the restrictions referred to. Among these conveyances was one by Murray Hoffman and wife, recorded July 28, 1846, and one by Lindley M. Hoffman, recorded May 6, 1848, and another by Lindley M. Hoffman and wife, made and recorded in October, 1850. It will be recalled that the signatures of the Hoffmans to the original agreement had not been properly proved by the certified testimony of the subscribing witness. The fact that so many of the original parties disregarded the agreement of 1846 by omitting from their deeds all reference to the restrictive covenant is a strong reason for concluding that they at least did not consider it as a binding agreement at that time. Bradley v. Walker, 138 N. Y. 291, 298. And, moreover, the question of the efficacy of the agreement of 1846 must have been discussed among and doubted by some of the original parties prior to May, 1854. The noncompliance with the terms of the agreement by so many of the original parties in failing to insert the covenant in their deeds doubtless attracted the attention of the other owners, and this fact, we may infer, led to the making of the new certificate on May 19, 1854, for the purpose of duly proving the signatures of John Murray Ogden, Murray Hoffman and Lindley M. Hoffman. The remedy adopted in 1854 to cure the defect shows clearly that its reality and seriousness were then appreciated. In view of these considerations we conclude that the covenants contained in the agreement

of 1846 did not become binding, and were not deemed binding by many of the original parties, at least down to the making of the new certificate in 1854. Nor do I think that this new certificate gave the covenant any vitality. Had it been attached to the agreement within a reasonable time after its execution, and before any of the parties thereto had parted with their interest, doubtless the agreement would have become effective, but here the certificate was supplied nearly eight years later and after eight of the original fifteen signers of the agreement had conveyed their holdings to ten strangers to that agreement. The plaintiff urges another point in support of this covenant. He claims that the defendant may not now repudiate it, for the reason that defendant's predecessors in title had the benefit of the restrictive agreement of 1846 through the observance of it by other property-owners. It is a fact in evidence that all the buildings erected on these lots are built in substantial compliance with the covenant. But none of them was erected until about 1855, and at that time eight of the original parties to the covenant had parted with their lots by deeds that contained no reference to this covenant. Moreover, the evidence indicates that the covenant was not observed generally until about 1854, when there was an attempt to put life into it by adding a new certificate to the agreement. I apprehend that this general observance of an inoperative covenant after 1854 cannot make a perpetual observance of it obligatory. The plaintiff cites the case of Altman v. McMillin, 115 App. Div. 234, in support of his contention, but its application to the facts of this case is not apparent. In that case there was also an agreement under seal for a restrictive covenant as to building, and the agreement was not to be binding upon the parties or any of them until all said parties had executed the same. The plaintiff there contended that this covenant was not an incumbrance or cloud upon his title, because the agreement creating it was void and ineffectual for the reason that one of the parties signing it was not an owner of the premises which he claimed to represent and bind. The court simply held that the plaintiff was estopped from denying the truth of the recitals in the agreement to the effect that the parties

were owners. Having thus decided that the agreement was valid on its face, the conclusion that it was an existing incumbrance necessarily follows. But in the case at bar the agreement on its face, unlike that in the case referred to, proves itself to be inoperative. It lacks the proof of execution called for by the agreement itself as a condition precedent to its becoming binding. Its incompleteness is obvious on mere inspection. The defendant here does not seek to vary or explain its terms or contradict any of its recitals as in the Altman case. Nor can it be said here, as in the Altman case, that the defendant, having reaped the benefit of the signatures of the other parties to the agreement, is estopped from denying its binding force, because, as a matter of fact, neither he nor his predecessors in title gained any benefit from those signatures. No one was bound by them. Whatever benefits accrued to the defendant by the actual restriction in the character and position of the buildings for so long a time were conferred voluntarily and not by virtue of the agreement of 1846. Plaintiff also cites the case of Tallmadge v. East River Bank, 26 N. Y. 105. He claims that defendant had notice of the restriction both from the record and from the fact that all the houses on that block were built with the set-back of seven feet. In that case all of the land affected was owned originally by one person. He divided it into lots and built houses upon them. He then proceeded to sell off the houses to various parties according to a map showing a set-back of eight feet for each house. Each purchaser was shown the map and was told that all of the houses were to be sold subject to the set-back, and each house was in fact so sold, but no mention of this restriction was made in the deeds. The court held that the restriction could be enforced in equity; that the original owner was bound in equity to use and dispose of his remaining lots, so that the assurances upon which prior purchasers bought would be fulfilled by all subsequent purchasers. It was held that this equity attached to the remaining lots. The case thus proceeds upon the assumption that there was a valid and binding agreement creating the restriction between the original owner of the various lots and his grantees. But in the case

at bar there is no evidence of any binding agreement, parol or under seal, creating the covenant. The cases are not parallel. The fact that defendant had notice of the agreement of 1846 as recorded cannot help the plaintiff. This was not notice of a binding agreement. On the contrary, it was information that the agreement was inoperative by its own terms for lack of proper proof of three of the signatures, and was recorded improperly. From an inspection of this record the defendant surely had a right to assume that there was no binding agreement creating the easement. Bradley v. Walker, 138 N. Y. 291, 299. But if this conclusion is not warranted, if the covenant sought to be created by the instrument executed in 1846 is still operative, there is a ground upon which the court should refuse the injunction prayed for. It would appear that for the last sixty years this part of Thirty-seventh street, with few exceptions, has been used exclusively for residential purposes, the houses having a set-back of seven feet. Within recent years this locality has materially changed in character. It is fast becoming a business center, with business buildings of enormous value. The avenues and streets immediately bounding Thirty-seventh street have entirely lost their residential character and have become business streets. The most valuable use to which property can be put in that neighborhood and in Thirty-seventh street itself is a business use with large business buildings. To enforce this covenant so long after its usefulness has disappeared, and to forbid the defendant to make this most valuable use of his property, would be injuring the defendant without conferring any benefit upon the plaintiff. For this reason also the injunction should be refused. Trustees of Columbia College v. Thacher, 87 N. Y. 311. There should be judgment for the defendant, dismissing plaintiff's complaint, with costs.

Judgment for defendant, dismissing the complaint, with costs.